486 So.2d 929 (1986)
UNITED STATES FIDELITY & GUARANTY CO., et al.
v.
James RICHARDSON, et al.
No. 84-CA-1549.
Court of Appeal of Louisiana, First Circuit.
March 25, 1986.
*930 John W. Perry, Jr., Baton Rouge, for U.S. Fidelity & Guar. Co. and East Baton Rouge Parish School Bd.
W. Luther Wilson, Baton Rouge, for Merrimack Mut. Fire Ins. Co.
Before EDWARDS, LANIER and PONDER[*], JJ.
EDWARDS, Judge.
On May 25, 1982, Demetric Ayio, fourteen-year-old daughter of Evelyn Richardson, was at Capitol Middle School in Baton Rouge, Louisiana. Demetric had brought a framed photograph of herself to the playground during a recreation period. While she was showing the picture to her friends, three boys approached and seized it. They proceeded to throw and kick the photograph, thereby breaking the glass. Demetric retrieved the damaged frame and hurled a piece of broken glass toward the boys "to scare them." One of the boys, Emile Jackson, happened to turn his head just as the glass arrived, and was struck in the right eye. He suffered a rupture to the globe of his eye, together with multiple lacerations. All vision was totally lost, in spite of surgery and other treatment. His left eye remained functional and undamaged.
Carolyn Marie Jackson, as natural tutrix of her minor child, made legal demand upon the East Baton Rouge Parish School Board and its insurer, United States Fidelity & Guaranty Company (USF&G). USF&G later negotiated a settlement for $45,000.00, obtaining at that time a complete assignment of all rights from Carolyn Jackson. USF&G then brought this action against the supposed parents of Demetric Ayio and their insurer, Merrimack Mutual Fire Insurance Company.
Demetric's mother, Evelyn Richardson, was living out of wedlock with James Richardson. They were unrelated, having the same name by mere coincidence. Demetric's father, Willie Ayio, had never been married to Evelyn Richardson and had not seen Demetric in several years.
James, Evelyn and Demetric lived together at James's house. They had an unwritten agreement by which they shared their expenses. James paid the mortgage note on the house, bought his own food, and met all the expenses on his two vehicles. Evelyn paid for the utilities and telephone; paid for her own automobile; *931 bought food for Demetric and herself; and, on rare occasions, helped James with the mortgage note.
James had a policy of homeowner's insurance with Merrimack Mutual Fire Insurance Company, the premiums for which were included in his mortgage payments. Consequently, USF&G sued Merrimack, James and Evelyn.
This case was heard in a non-jury trial on July 13, 1984. The court rendered judgment in favor of USF&G and against Merrimack and Evelyn Richardson, in solido, for the total amount of $45,000.00 plus legal interest. Merrimack brings this appeal, raising two assignments of error.
Merrimack's first assertion is that Demetric was not covered under the terms of the policy. "Insured" is defined therein as "residents of the named insured's household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of any insured."
Demetric was fourteen at that time and a resident of the household. Whether she was "in the care of any insured" was the critical question to be decided by the trial court. In its written reasons for judgment, the court said, "It is well settled in the law that any ambiguities in regard to insurance coverage are to be decided in favor of coverage. In this case, the court is of the opinion that the Ayio child is covered under the policy." The court probably felt that Demetric was "in the care of" James Richardson, since this was the most obvious way to find coverage.
Merrimack disagrees with this, arguing that the child was not in the legal care of James Richardson and that he had no responsibility whatever for her well-being. We think Merrimack's argument is unrealistic and is not supported by the substance of the testimony.
It is clear that on the basis of the agreement between the parties, the payments made by James Richardson did directly benefit Demetric Ayio. He was caring for the child by letting her stay in his home and by paying for both the maintenance of the home and his other agreed-upon expenses. Further, the bills and other expenses paid by James Richardson allowed Evelyn to devote more of her own income to Demetric's needs. Even though he did not consider himself as having guardianship of Demetric, James was much more than a nameless, unseen benefactor. We conclude, therefore, that the trial court was correct in its finding that the child was "in the care of" James Richardson under the policy.
This is not, however, the only way to find coverage. Evelyn Richardson must certainly be considered a "resident of the named insured's household." See Bearden v. Rucker, 437 So.2d 1116 (La.1983). Since Demetric was plainly in her mother's care, this would include her as "any other person under the age of twenty-one in the care of any insured." Accordingly, this assignment of error has no merit.
The second assignment raised by Merrimack urges that USF&G had sued, not under subrogation, but upon the purchase of a litigious right. Defendant cites article 2652 of the Louisiana Civil Code which provides that:
He against whom a litigious right has been transferred, may get himself released by paying to the transferee the real price of the transfer, together with interest from its date. (Emphasis added)
The argument is that USF&G paid $45,000.00 in settlement for the injury and, at the same time, procured both a release of all rights against the East Baton Rouge Parish School Board and an assignment of Emile Jackson's rights against third parties. USF&G then sued, not in subrogation, but in its capacity as assignee. Under Article 2652, recovery would therefore be limited to the real price of the assignment. The $45,000.00 was the price of USF&G's exposure. What it bought was a tort release. Since the assignment actually cost *932 USF&G nothing, so the argument concludes, the recovery should be zero.
This argument fails on two grounds. First, it omits the provision of LSA-C.C. Art. 2653, which says:
A right is said to be litigious, whenever there exists a suit and contestation on the same. (Emphasis in original text)
Our courts have held that a right transferred before a suit has been filed is not litigious. Hawthorne v. Humble Oil & Refining Company, 210 So.2d 110 (La. App. 1st Cir.1968), writ refused, 252 La. 832, 214 So.2d 160 (1968), and Wood v. Zor, Inc., 154 So.2d 632 (La.App. 4th Cir.1963). Neither Emile Jackson nor his legal guardians ever actually filed suit against the East Baton Rouge Parish School Board, USF & G, or any other defendant. We find, therefore, that no litigious right existed at the time USF & G filed its suit.
The argument's second difficulty is the fact that USF & G is properly subrogated to the claim. Article 2160 of the Louisiana Civil Code, as it applied before the recent revision, provided:
1. When the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges, and mortgages against the debtor, this subrogation must be expressed and made at the same time as the payment.
Conventional subrogation by consent of the creditor is possible in all cases and may be given to any third person who is willing to pay the debt and become subrogated to the creditor's rights. LeBoeuf v. Dupre, 378 So.2d 150 (La.App. 1st Cir. 1979). USF & G and the East Baton Rouge Parish School Board settled the claim and themselves accepted the responsibility of pursuing those parties who actually caused the damage. This is an everyday occurrence in our law. Consequently, the second assignment of error is without merit.
Costs are taxed to defendants.
AFFIRMED.
NOTES
[*] Judge Elven E. Ponder, retired, appointed to hear appeals vice Judge John S. Covington, temporarily assigned to the Twenty-Fifth Judicial District Court.