TONYA McGUIRE, Plaintiff v. MOLLIE D. DRAUGHON, and NORTH CAROLINA
FARM BUREAU MUTUAL INSURANCE COMPANY, Defendants

No. COA04-716

(Filed 17 May 2005)

**Insurance— automobile—regular use exception**

    Mollie Draughon's use of her mother-in-law's automobile was within the "regular use" exception of an insurance policy issued by defendant-Farm Bureau to Mollie Draughon, and summary judgment was correctly granted for Farm Bureau on the question of Farm Bureau's coverage of Ms. Draughon's automobile accident. "Regular" use does not imply daily use.

Appeal by plaintiff from judgment entered 13 January 2004 by Judge Albert Diaz in Mecklenburg County Superior Court. Heard in the Court of Appeals 21 March 2005.

*Wallace and Graham, P.A., by Marc P. Madonia, for plaintiff-appellant.*

*Caudle & Spears, P.A., by C. Grainger Pierce, Jr. and L. Cameron Caudle, Jr., for defendant-appellee North Carolina Farm Bureau Mutual Insurance Company.*

MARTIN, Chief Judge.

On 6 October 2001, defendant Mollie Draughon was operating a 1993 Ford Explorer belonging to her mother-in-law, Betty Draughon, when she was involved in a collision with a motorcycle operated by plaintiff. Plaintiff was injured as a result of the collision.

The Ford Explorer belonging to Betty Draughon was insured by Travelers Indemnity Insurance Company, along with a 1988 Dodge Colt, also owned by Betty Draughon. The policy carried limits of liability of $50,000 per person. At the time of the accident, Mollie Draughon and her husband, Theodore, owned two vehicles, a 1992 Suzuki and a 1988 Honda. Those vehicles were insured by Farm Bureau Mutual Insurance Company, Inc. (Farm Bureau) under a policy which had limits of $250,000 per person. The policy specifically excluded coverage for any other vehicle furnished for the Draughon's "regular use," stating in pertinent part:

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle, other than your covered auto, which is

   a. owned by you; or

   b. furnished for your regular use.

Travelers tendered its policy limits of $50,000 to plaintiff; Farm Bureau denied coverage based upon the exclusion in its policy. Plaintiff brought this action seeking a declaratory judgment that Farm Bureau provided coverage to Mollie Draughon for her liability to plaintiff. Defendant Farm Bureau filed its answer, denying that it provided coverage based upon the "regular use" exclusion in its policy. Farm Bureau subsequently moved for summary judgment.

The evidence before the trial court showed that Mollie and Theodore Draughon live next door to Betty Draughon, Theodore's mother, in Lewisville, North Carolina. Their two houses are on a single lot that measures an acre and a half, with a shared driveway between the houses. Betty Draughon regularly drove the 1988 Dodge Colt; the 1993 Ford Explorer had belonged to her husband, Billy Draughon, prior to his death in November, 1999. Betty Draughon stated in her deposition that she had only driven the Explorer once or twice, and when it was not being used, it was parked between her house and her son's house in the shared driveway.

In 1998, Mollie and Theodore Draughon's son took the 1988 Honda away with him to college, leaving them with one car, the 1992 Suzuki, between them. When they needed a second car, they used the Explorer. Betty paid the property taxes on the Explorer and kept the title and other vehicle records, but the Explorer was available for the Draughons' use at any time. Betty placed no restrictions on its use, and the Draughons did not have to seek her permission before driving it. The Draughons had one set of keys and two spare keys for the Explorer, and they paid for the Explorer's gas and emissions inspections. Mollie stated in her deposition that she could not close the front driver's side door of the Explorer without assistance. However, she also testified that from November of 1999 to October of 2001 she drove the Explorer an average of two to three times per week. Theodore verified this estimate in his deposition. Mollie stated she used the Explorer to run errands, to drive Betty to various places, and occasionally to drive to work. Mollie and Theodore Draughon also used the Explorer for most trips out of town because it was larger and

more reliable than their Suzuki. Indeed, the accident giving rise to this litigation happened when Mollie and Theodore were using the Explorer to vacation in Myrtle Beach, South Carolina.

The trial court granted Farm Bureau's motion for summary judgment. Plaintiff appeals.

"The standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Bruce-Terminex Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). The burden is upon the moving party to show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982); N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). If the moving party satisfies its burden, the burden shifts to the non-movant to set forth specific facts showing there exists a triable issue of fact. *Lowe*, 305 N.C. at 369-70, 289 S.E.2d at 366.

The only issue presented by this appeal is whether defendant Draughon's use of the Explorer constituted "regular use" according to North Carolina law. First, plaintiff argues there were genuine issues of material fact which should have been presented to a jury as to whether Mollie Draughon's use of the vehicle was such as to be "regular." We disagree.

In response to an interrogatory asking her to describe the "frequency of [her] use of the vehicle," Mollie Draughon stated she "[o]ccasionally used [it] for trips and taking Betty Draughon places." In her deposition, however, Mollie Draughon said she used the Explorer an average of two to three times per week to run errands, go to work, and take Betty Draughon places. Plaintiff contends these answers are inconsistent and therefore present genuine issues of material fact regarding the frequency of defendant's use of the vehicle and her credibility as a witness. We disagree.

Defendant Draughon stated in her deposition that by "occasionally" she meant two to three times per week. Thus, by her own definition of "occasional," her response to the interrogatory and her deposition testimony are not inconsistent, but are actually corroborative of each other. Because these statements can be readily reconciled, the trial court did not err in finding no conflict between them. The facts in this case, therefore, are not in dispute. When the facts of a case are undisputed, construction and application of an insurance policy's provisions to those facts is a question of law. *Nationwide*

*Mut. Ins. Co. v. Walters*, 142 N.C. App. 183, 189, 541 S.E.2d 773, 776 (2001). Because the trial court was only required to apply the law to the undisputed facts in this case, this case is appropriately resolved by summary judgment.

When a liability policy does not define the term "regular use," no "absolute definition" can be established, and a determination of coverage under the policy must be based on the particular facts and circumstances of that case. *Id.* at 188, 541 S.E.2d at 776 (quoting *Whaley v. Insurance Co.*, 259 N.C. 545, 552, 131 S.E.2d 491, 496-97 (1963)). In *Whaley*, our Supreme Court set out two factors for analyzing whether the use of a vehicle constitutes regular use: (1) the availability of the vehicle to the insured, and (2) the frequency of its use by the insured. *Whaley, supra* at 554, 131 S.E.2d at 498.

In this case, the evidence established that Betty Draughon "furnished" the vehicle for Mollie and Theodore's use by leaving it in the shared driveway between their houses and placing no restrictions on its use. She did not require them to ask her permission before using it, and she did not drive it herself. She allowed them to take it out of town, the Draughons possessed three keys for the Explorer, and the vehicle was clearly available for Mollie's use on almost any given day for a period of nearly two years, regardless of whether she needed assistance to close the driver's side door. The fact that Betty Draughon retained possession of the title is of no consequence to the issue of whether the car was unavailable to Mollie. "Where an insured driver has the unrestricted use and possession of an automobile, the certificate of title for which is retained by another, the car is 'furnished for the regular use of' the insured driver." *Gaddy v. Insurance Co.*, 32 N.C. App. 714, 717, 233 S.E.2d 613, 615 (1977). Because Betty in no way restricted Mollie's use of the vehicle, we find no genuine issue of material fact regarding the availability of the Explorer for Mollie's use.

Plaintiff contends, however, that the frequency of Mollie's use of the Explorer does not constitute "regular use" under our case law. Our Supreme Court has established that the regular use exclusion does not apply to the "casual," "occasional," or "infrequent" use of another vehicle, *see Whaley*, 259 N.C. at 552, 131 S.E.2d at 496; *Whisnant v. Insurance Co.*, 264 N.C. 195, 199, 141 S.E.2d 268, 270 (1965), and plaintiff argues that our case law is drifting towards a definition of regular use as meaning daily use. Mollie's use of the Explorer, however, was consistent as well as continuing. Both Mollie and her husband estimated that she drove the Explorer an average of

two to three times per week for almost two years. "The rules of construction of insurance contracts are well established. Language must be given its ordinary, plain meaning unless a word is ambiguous.' " *Strickland v. State Farm Mut. Auto. Ins. Co.*, 133 N.C. App. 71, 72, 514 S.E.2d 304, 304 (1999). The plain meaning of "regular" does not imply "daily," and we decline to create such a bright line rule. *See N.C. Farm Bureau Mutual Ins. Co. v. Warren*, 326 N.C. 444, 448, 390 S.E.2d 138, 140-41 (1990) (using a *Webster's* dictionary definition of "regular" as "steady or uniform . . . in practice or occurrence; . . . returning or recurring at stated or fixed times or uniform intervals" to support a finding that a recurring pattern of a vehicle's use constituted regular use). Mollie's consistent and recurring use of the Explorer was sufficient to satisfy the frequency prong of the analysis. The trial court properly applied both the availability and frequency prongs to the facts of this case and properly granted summary judgment in defendants' favor.

The order from which plaintiff appeals is affirmed.

Affirmed.

Judges HUDSON and JACKSON concur.